IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PAUL LEN SCHAFFER,                       :
                    Petitioner,          :
          v.                             :  Case 3:10-cv-294-KRG-KAP
KENNETH CAMERON, SUPERINTENDENT          :
S.C.I. CRESSON,                          :
                    Respondent           :

## Report and Recommendation

### Recommendation

Petitioner Schaffer challenges, by a petition for a writ of habeas corpus pursuant to 28 U.S.C.§ 2254, a 26-52 year sentence imposed by the Court of Common Pleas of Jefferson County (Honorable John H. Foradora, P.J.) on June 5, 2002. I recommend that the petition be granted in part, and that a conditional writ issue requiring the re-sentencing of petitioner.

### Report

The record is contained at docket no. 7, Response; docket no. 11, Supplemental Response (PCRA Transcript); and docket no. 12, Supplemental Response (Megan's Law hearing transcript)[1].

---

1. The transcripts are remarkably poorly edited: either the witnesses made ridiculous malapropisms ("inclination" for "indication," "criminal genetic" for "criminogenic," "deep-seeded" for "deep-seated," and on and on) or the court reporters transcribed consonants and vowels only approximately (e.g., "thrushed" for "thrust," a persistent confusion between "e" and "a" or "I" as in "affect" for "effect," "prayed" for "preyed," "re-enforced" for "reinforced," Schaffer is repeatedly described as "a loaner" when the speaker most likely did not mean that Schaffer worked in a bank, charges were "widdled" down and not "whittled" down, "Schaffer" is repeatedly written as "Shaffer" and "Judge Reilly," the president judge of Clearfield County for only about two decades, is written as "Judge Riley," and on and on).

In November 2000, Schaffer was charged by complaint with sexually abusing S., the daughter of his paramour J.M., over the period from September 1997 to July 1998, when the daughter, S., was ten years old and Schaffer was about 30. By the time the first allegations of abuse were made by S. in the Summer of 2000, Schaffer and J.M. had split up and were engaged in shared custody of J., their biological daughter, S.'s half sister. While on vacation in Michigan, S. told a cousin about the sexual contact Schaffer had had with her; the cousin told her mother, who told J.M., who contacted Children & Youth Services and the police. The investigator for CYS who interviewed S. about the allegations was William Allenbaugh.

After the complaint was filed and a preliminary hearing was held, the District Attorney filed a 30-count indictment in February 2001; after a motion to quash was filed, the D.A. moved to amend the information to a 297-count indictment. By the time of trial the indictment was amended yet a third time to one count of rape, attempted rape, involuntary deviate sexual intercourse, attempted involuntary deviate sexual intercourse, statutory sexual assault, indecent assault, corruption of a minor, and endangering the welfare of a child, because (according to the state courts) S. could not provide specific dates of any incident and there was no corroborating evidence.

Schaffer was represented before and at trial by Ronald Collins, Esq., a 20-year veteran who had been defense counsel in about 200 criminal trials; Collins' defense strategy was to point out motives that would give S. reason to fabricate allegations against Schaffer. Schaffer himself took the stand to deny that he had had any sexual contact with S. Collins decided against pursuing a character witness or reputation-based line of defense because, during the period after S.'s accusation and before trial, two relatives of Schaffer's came forward and alleged that Schaffer had molested them too, about ten years earlier when they had been about S.'s age and Schaffer was about 21. Those allegations could have been used to impeach character witnesses, but were as a result of Collins' strategy apparently not presented to the jury.

On March 8, 2002, the jury began deliberating and initially reported that they were deadlocked because of what the foreman of the jury volunteered was a "lack of evidence." Judge Foradora gave a standard charge asking the jury to continue with its deliberations, and some time later the jury convicted Schaffer on all counts.

Judge Foradora revoked Schaffer's bail, remanded him to jail, and ordered that a presentence evaluation of Schaffer be conducted as required by Pennsylvania's Megan's Law, see 42 Pa.C.S.§ 9795.4. In addition to an evaluation of the specific offense conduct, the Megan's Law assessment is a searching inquiry

into the "characteristics of the individual, including" "behavioral characteristics that contribute to the individual's conduct" and "factors ... reasonably related to the risk of re-offense." Section 9795.4(b)(3)(iv) and (4). Schaffer appeared voluntarily and without counsel for an interview with an investigator for the Sexual Offenders Assessment Board and at an interview with a psychologist for the SOAB, on Collins' advice that his participation might be looked upon favorably by Judge Foradora. The Commonwealth's expert psychologist who interviewed Schaffer was the same Allenbaugh who had interviewed S. in the course of the prosecution of Schaffer. The interviews went poorly for Schaffer.

At the Megan's Law hearing on May 28, 2002, Allenbaugh testified that he administered some psychological tests to Schaffer that Allenbaugh interpreted as showing that Schaffer had "a significant personality pathology in the form of schizoid, avoid[a]nt and dependent features," and was "apathetic, distant and unsocial." Allenbaugh further reported that Schaffer had made admissions of other sexual assaults to the SOAB interviewer, Paul Everett, who did not testify at the Megan's Law hearing or sentencing. Collins did not object to Allenbaugh's hearsay report of Everett's alleged testimony about what Schaffer had told him (Collins conceded that Allenbaugh as an expert could rely on Everett's hearsay reports of Schaffer's statements, and understood that Schaffer's statements to Everett were as party admissions not

hearsay), but did object to the hearsay when Allenbaugh began testifying about what Everett had told him Schaffer's relatives had told him about being molested by Schaffer. The assistant district attorney represented that if necessary he would call Everett (which would not, of course, cure the hearsay problem of the relatives' statements.) Judge Foradora overruled Collins' objection as he apparently construed it to relate to the hearsay nature of Allenbaugh's testimony about Schaffer's statements to Everett, and because there was no further elaboration of the objection, did not decide any hearsay objection relating to the statements of the relatives to Everett. In any case the hearing moved away from the relatives' statements and back to Allenbaugh continuing to relate, with editorial comments, what Allenbaugh said Everett told him Schaffer had told Everett, specifically that Schaffer told Everett:

I realized I was interested in kids at approximately 18. I was interested in kids around the age of 10. I didn't really try to pick up kids. I touched the ones around me.

Allenbaugh did acknowledge that Schaffer said that Everett was lying about this statement, but also made it crystal clear that on the basis of Schaffer's admissions to him, Allenbaugh believed Everett and not Schaffer. In addition to testifying that Schaffer admitted to molesting his relatives when they were about S.'s age but attempted at the same time to deflect criticism by misrepresenting them as older children, Allenbaugh told the court that Schaffer variously admitted masturbatory activity with S. and

masturbatory fantasies (although not about S.) and to a deep-seated interest in sex with children generally, that Schaffer admitted that he had both deliberately groomed S. solely for sexual gratification and that he had also done so to retaliate against S.'s mother for what Schaffer believed to be an episode of infidelity. Allenbaugh also said Schaffer admitted alcohol use, and interpreted that as a typical attempt by a pedophile to deflect blame for his actions from himself. Allenbaugh did not re-interview S. for the assessment of Schaffer but found that it was evidence in favor of S.'s credibility relative to Schaffer both that S. had stated she did not want to come forward with allegations against Schaffer and that S. had allegedly had come forward out of a stated desire to protect her half-sister J. from Schaffer. All the evidence pointed in one direction for Allenbaugh: he concluded that Schaffer was a calculatingly deliberate serial pedophile without even the poor excuses of substance abuse or a history of sexual assault in Schaffer's own past. docket no. 12.

Collins had offered a technical defense to the application of Megan's Law to Schaffer, but at sentencing on June 5, 2002, conceded there was not much factual challenge to the presentence report. Determining that Schaffer was a sexually violent predator who had committed other sexual assaults as a result of the testimony by Allenbaugh about what Schaffer told

Allenbaugh and Everett, Judge Foradora departed upward from the guidelines and sentenced Schaffer to consecutive statutory maximum sentences on all the charges except those that merged by operation of law.

Represented by new counsel, Patrick Livingston, Esq., Schaffer then took a direct appeal raising three claims: that Judge Foradora had given an improper <u>Allen</u> charge when the jury indicated it was deadlocked; that the sentence was too severe; and that as applied to Schaffer, Megan's Law was unconstitutional. docket no. 7, Exhibit E, Brief for Appellant in <u>Commonwealth v. Schaffer</u>, 2128 WDA 2002. A panel of the Superior Court affirmed the conviction but initially vacated the judgment of sentence on January 12, 2005, on the ground that Judge Foradora erred in departing upward on the basis of the incriminating statements Schaffer made during the Megan's Law investigation process because those statements related to "ancient" and uncharged misconduct. docket no. 7, Response, Exhibit G, <u>Commonwealth v. Schaffer</u>, 2128 WDA 2002 (Pa.Super. January 12, 2005). The Commonwealth petitioned for reargument <u>en banc</u>, and the panel vacated its opinion and set the matter down for panel reconsideration on March 4, 2005. docket no. 7, Response, Exhibit J. The panel then reissued its opinion on February 2, 2006, this time affirming the judgment of sentence in its entirety. The panel rejected Schaffer's sentencing challenge because the record made during the Megan's Law interviews with Everett and

Allenbaugh amply supported Judge Foradora's upward departure, stating:

In order to analyze whether the sentencing court herein properly considered Appellant's prior conduct, some matters must be clarified. Appellant implies on appeal that the proof about his abuse of the other children is premised upon legally incompetent hearsay admissions that were allegedly made by him to Mr. Everett and repeated to Mr. Allenbaugh. He also implies that he denied making admissions about the prior abuse [footnote].

in the footnote, the panel stated:

Appellant also maintains that his SOAB interview was mandatory, which simply is incorrect. Nothing in Megan's Law requires a defendant to meet with the SOAB investigator or assessor. In fact, such assessments have been made and reviewed by this Court without the cooperation of the defendant. See Commonwealth v. Krouse, 799 A.2d 835 (Pa.Super.2002). Appellant also presents various due process arguments, which are waived under Pa.R.A.P. 302(a), and are not adequately developed.

the opinion continued:

Both suggestions involve material misrepresentations of the record. As to the first insinuation that hearsay established the proof, the record irrefutably reveals that the district attorney offered to have Mr. Everett testify so as to alleviate any hearsay problem. Appellant rejected this offer and in doing so, implicitly abandoned any hearsay objection. The district attorney evidenced clear resolve to present the testimony necessary to establish the truth of the allegations of prior abuse if Appellant had elected to proceed with his hearsay objection. Appellant will not now be permitted to challenge the proof of these facts based on hearsay when the Commonwealth stood ready to remedy the alleged objectionable evidence, but was relieved from doing so by Appellant. As to Appellant's protestation that he denied these facts, the record is to the contrary. Appellant admitted the truth of the two victims' accusations in his conversation with Mr Everett. At the Megan's Law hearing and during his interview with Mr. Allenbaugh, Appellant **never denied** admitting to Mr. Everett that he sexually abused those children. Instead, Appellant merely disputed the age of the victims when the abuse occurred. He then denied to Mr. Allenbaugh that he told Mr. Everett that when he was eighteen, he was sexually attracted to ten-year-old children,

implicitly admitting to Mr. Allenbaugh that he had abused his relatives.

We also must observe that the trial court was allowed to rely upon the SOAB assessment information when imposing sentence. Under 42 Pa.C.S. 9795.4(f), a copy of the SOAB assessment "shall be provided to the agency preparing the pre-sentence investigation," and therefore, it may be utilized by the court as an aid at sentencing. Pa.R.Crim.P 702(A).

Finally, we note that Appellant, for the first time in these proceedings in a post-submission communication to this panel, raises the question of whether the use of his SOAB assessment admissions violated his Fifth Amendment right to remain silent. This position was not raised at any point at the Megan's Law hearing or at sentencing. Similarly, it was not raised in Appellant's post-sentence motion or in his Pa. R.A.P. 1925(b) statement. It has thus been waived under both Pa. R.A.P. 302 and Pa. R.A.P. 1925, and we will not consider it on appeal.

We now examine whether the case law analyzed above prohibited use of the prior uncharged criminal conduct during sentencing. We observe that the evidence linking Appellant to these other crimes stood unrefuted. That evidence sprang from Appellant's own mouth and was confirmed by the victims. Under Frank, Palmer, and Vernille, the sentencing court was permitted to rely upon Appellant's admissions when it imposed sentence.

docket no. 7, Response, Exhibit P, Commonwealth v. Schaffer, 2128 WDA 2002, slip opinion at 21-24 (Pa.Super. February 2, 2006).

Schaffer applied for reargument, docket no. 7, Response, Exhibit Q, but the Superior Court denied that on April 7, 2006, docket no. 7, Response, Exhibit R. Schaffer then petitioned the Supreme Court for allowance of appeal. On August 31, 2006, the Pennsylvania Supreme Court issued a per curiam order denying the petition for allowance of appeal. See Commonwealth v. Schaffer, 894 A.2d 120 (Pa.Super.), alloc. denied, 906 A.2d 542 (Pa.2006).

Pursuant to Rule 13 of the Rules of the Supreme Court of the United States, petitioner had 90 days after the entry of the Pennsylvania Supreme Court's order denying discretionary review to

9

file a petition for a writ of certiorari. Schaffer did not file a petition for certiorari, and by law his judgment of sentence became final on the date the 90-day period expired, on or around Wednesday, November 29, 2006. See Swartz v. Meyers, 204 F.3d 417, 419 (3d Cir.2000) (A state prisoner's judgment of sentence becomes final at the conclusion of direct review or the expiration of time for seeking such review if no petition for certiorari is filed.)

Almost a year later Schaffer, again represented by Livingston, filed a timely petition on November 20, 2007, under Pennsylvania's Post Conviction Relief Act (PCRA), 42 Pa.C.S.§ 9541 et seq., alleging that Collins had been ineffective in two particulars: 1) failing (by overlooking potential witnesses) to prepare adequately for the defense that S. had a motive to testify falsely at the behest of her mother because her mother and Schaffer were involved in an acrimonious custody dispute over their child, S.'s half-sister; and 2) failing either to prevent Schaffer from going to the Megan's Law interview, to accompany Schaffer to his interview with the Megan's Law investigator (and either invoking Schaffer's right to remain silent or moving to suppress Schaffer's alleged statements to Allenbaugh) or to move to disqalify Allenbaugh, which led to Schaffer being held responsible for making the incriminating statements used against Schaffer at his sentencing.

Judge Foradora held a hearing on the PCRA petition on June 24, 2008, at which Collins testified. As for his trial stewardship, Collins reported that there really was no evidence to support the "acrimonious custody dispute" theory of bias. As for the Megan's law proceedings, Collins acknowledged that the statements that Schaffer reportedly made to Everett and Allenbaugh hurt Schaffer at sentencing, but that he had left it up to Schaffer whether he would participate in the Megan's Law evaluation, explaining:

[M]y take on the Megan's law hearing at that time was given what he was convicted of and I thought it was kind of unrealistic to think that the Megan's law hearing would turn out not to find him a predator.

Nevertheless

If you do not participate in it then the judge is going to be looking at that and that may factor into what sentence you got whether you looked cooperative or not. So in participating in it would have been cooperative. The down side of it was at that point Paul had all along denied any of the allegations so I'm not sure what more he could tell the Megan's law investigator rather than a denial and at that point I'm not sure whether that would be received all that well. So that was the up side and down side.

Collins, as noted above, was aware that two of Schaffer's relatives had also come forward to accuse Schaffer of molesting them, but didn't recall discussing how Schaffer should handle questions about those allegations because Schaffer had denied those allegations too. In fact Collins testified that because of Schaffer's denial that he had ever molested anyone:

I had no reason to believe or suspect that Paul was going to make an admission to something that he was telling me all along that he had not done.

Collins was aware that Allenbaugh had taken part in the initial investigation of S.'s allegations, but had forgotten that and did not pursue any attempt to suppress Schaffer's damaging admissions either by alleging violations of <u>Miranda</u> or even by disqualifying Allenbaugh as biased and seeking a second interview, even though Collins acknowledged that he would have pursued that option if he had recognized Allenbaugh's earlier involvement.

Judge Foradora denied relief on November 6, 2008. Judge Foradora wrote a lengthy, thorough, and for the most part well-reasoned opinion. However, addressing the claim that Collins had been ineffective in allowing Schaffer to go to the Megan's Law interviews alone, Judge Foradora wrote:

> Contrary to Schaffer's claims, Collins did advise his client that he did not have to participate in the pre-sentence or Megan's Law assessment–that he retained the perogative of exercising his right to remain silent. That being the case, he cannot not fault his attorney for his decision to talk. Likewise, because Schaffer was informed of his continuing right to remain silent, Collins had no basis upon which to raise a *Miranda* objection.
>
> Nor can he reasonably blame Collins for not attending the interviews. As Collins noted, attorneys typically do not accompany their clients to those interviews, and there exists no law requiring it. Moreover, Collins had no reason to assume that either interview would produce adverse results. As he testified, Schaffer had avowed his innocence the whole way through trial. Thus, Collins never suspected that he might make post-trial admissions. Even if he had been present at the interview, however, Collins at best could have advised his client to remain silent. On the other hand, he had already apprised Schaffer that he possessed that right. It is not reasonable to expect, therefore, that either interview would have proceeded differently had Collins

been sitting in the room. Simply stated, the facts as Collins knew them gave him no reason to believe that Schaffer's was one of the cases where it may have been appropriate under ABA standards for counsel to attend post-verdict interviews.

Additionally, Schaffer was not prejudiced, because there is no evidence that his silence would have resulted in a non-SVP opinion. Allenbaugh was in possession of the trial record. Because the jury had found Schaffer guilty under the facts as described by [S.] he would have assumed Schaffer's guilt regardless of his silence or profession of innocence and further assumed that [S.] had testified truthfully. Allenbaugh still would have been privy to the other alleged victims' reports, as well, and Schaffer's silence would not have changed that.

A SOAB evaluator does not have the option of deciding independently whether a victim was credible. The jury makes that decision, and only when that body decides that question affirmatively does the evaluator have contact with the defendant. The evaluator can only accept the jury's determination and consider the victim's testimony accordingly, weighing his or her testimony against the SVP criteria.

In this case, Allenbaugh had already interviewed [S.] and found her story to be credible. Nearly two years later, he assumed for purposes of his assessment that [S.] was credible. Given his role, though, and whether or not he had previously had contact with her, Allenbaugh would have been obliged to credit [S.]'s testimony. Any Megan's Law evaluator would have been so obligated. Consequently, the Court can say without reservation that Collins' inaction in this instance had no prejudicial effect on his client. Were the court to remand Schaffer for a second evaluation by a representative other than Allenbaugh, he or she would operate under the same premise: that [S.] was a credible witness who offered truthful testimony. These issues, therefore, though potentially the most persuasive of them all, provide Schaffer no relief under the Post-Conviction Relief Act.

docket no. 7, Response, Exhibit Z-2, Exhibit B to the Petition for

Allowance of Appeal, Commonwealth v. Schaffer, CP-33-CR-569-2000

Opinion on Defendant's PCRA Petition at 8-9 (C.P. Jefferson

November 6, 2008), affirmed Commonwealth v. Schaffer, 2028 WDA 2008

(Pa.Super. October 26, 2009).

Judge Foradora, in describing the procedural history of

the matter, additionally wrote that on direct review "[a]fter

13

unsuccessfully appealing to Superior Court, Schaffer was denied review by the Pennsylvania and United States Supreme Courts." docket no. 7, Response, Exhibit Z-2, Exhibit B to the Petition for Allowance of Appeal, Commonwealth v. Schaffer, CP-33-CR-569-2000 Opinion on Defendant's PCRA Petition at 1 (C.P. Jefferson November 6, 2008), affirmed Commonwealth v. Schaffer, 2028 WDA 2008 (Pa.Super. October 26, 2009). Schaffer again took a counseled appeal to the Superior Court, which affirmed the denial of relief on October 26, 2009, and then denied reargument on January 6, 2010. docket no. 7, Response, Exhibit Z-2, Exhibit A to the Petition for Allowance of Appeal, Commonwealth v. Schaffer, 2028 WDA 2008 (Pa.Super. October 26, 2009).

On the question of trial counsel's effectiveness in failing to accompany Schaffer to the Megan's Law interview or in not attempting attempt to limit the damage by moving for Allenbaugh's disqualification or to suppress Schaffer's statements, the Superior Court adopted Judge Foradora's opinion without any analysis of its own, but then added:

[W]hile the claims raised by Appellant may appear to have merit, Appellant has failed to establish in his argument how he was prejudiced by trial counsel's action. Specifically, Appellant has failed to prove that there is a reasonable probability that, but for counsel's alleged error, the outcome of the proceeding would have been different.

Commonwealth v. Schaffer, 2028 WDA 2008, slip op. at 7-8 (Pa.Super. October 26, 2009). Schaffer's petition for allowance of appeal was denied without comment on June 9, 2010. No petition for certiorari

14

was filed. <u>Lawrence v. Florida</u>, 549 U.S. 327 (2007)(the 90-day period for seeking certiorari is not part of the time a collateral attack is pending when no petition for certiorari is in fact filed.) Another five months ran until Schaffer filed his federal petition on or about November 9, 2010.

I

Respondent contends, docket no. 7, Response, that the court cannot reach the merits of Schaffer's claims because the petition is untimely under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)'s statute of limitations, 28 U.S.C.§ 2244(d). AEDPA requires, with a few exceptions not applicable here, that habeas corpus petitions under 28 U.S.C.§ 2254 be filed within one year of the date the petitioner's judgment of sentence became final:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of-
*(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;*
(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C.§ 2244(d)(1)(A)-(D) (emphasis added).

15

AEDPA's limitations period is tolled when a "properly filed" application for state collateral review is pending. 28 U.S.C.§ 2244(d)(2). Petitioner filed a timely petition under Pennsylvania's Post Conviction Relief Act (PCRA), 42 Pa.C.S.§ 9541 et seq. That tolled the limitations period until June 2010, when Schaffer had only about 10 days left to file in the statutory limitations period. As noted above, he filed five months later.

Schaffer contends that the limitations period should be equitably tolled in his case. docket no. 10. The Commonwealth makes no response. The Supreme Court holds that for equitable tolling of the limitations period in habeas cases, a petitioner must show extraordinary circumstances, that is: 1) he has been pursuing his rights with reasonable diligence and 2) some extraordinary circumstances prevented the timely filing of the petition. Holland v. Florida, 130 S.Ct. 2549, 2562-63 (2010). See also Lacava v. Kyler, 398 F.3d 271, 275-76 (3d Cir.2005); Brown v. Shannon, 322 F.3d 768, 773-74 (3d Cir.2003); Miller v. New Jersey State Dept. of Corr., 145 F.3d 616, 618-19 (3d Cir.1998). Extraordinary circumstances include barriers to filing put in a petitioner's path by a court. As one trial court has succinctly described the doctrine:

From the case law this rule emerges: if judges or their staffs *affirmatively* mislead a petitioner that may supply an extraordinary circumstance; but no relief is merited if they simply fail to educate a defendant about legal time limits, however subtle or hard to discern, for exercising legal rights.

Clarkson v. Williams, 2011 WL 6328367 at *6 (S.D.Ga.2011). There is no question that Judge Foradora's inadvertent statement, that direct review was sought in the United States Supreme Court, was incorrect. As for reasonable diligence, a reasonable person, whether a lawyer or a layman like Schaffer acquainted with the legal system only as a defendant, should expect that it might take at least several months for an appellate court to decide whether to grant review. An obvious question is whether Schaffer truly did make efforts to ascertain the status of his various appellate filings or whether he did nothing and is simply trying to benefit from Judge Foradora's misstatement of the procedural history of this case. Significantly, the Commonwealth does not challenge Schaffer's history of his efforts or suggest that they would not be reasonable inquiries to make while preparing a habeas corpus petition. On this record, and because the ineffectiveness claim by Schaffer presents a substantial issue, I find the limitations period to have been equitably tolled.

II

On the merits, most of petitioner's claims for habeas relief must be denied because the state court's decision satisfies AEDPA's deferential standard of review. AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that

state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002). It provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C.§ 2254(d)(1) & (2). See also Williams v. Taylor, 529 U.S. 362, 407 (2000)("[A] state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case."); Lambert v. Blackwell, 387 F.3d 210, 234 (3d Cir.2004). AEDPA places a heavy burden on petitioner. It is not enough to show that the state court's decision was an incorrect or erroneous application of federal constitutional law. See Wiggins v. Smith, 539 U.S. 510, 521 (2003) (citations omitted). Petitioner must show that the state court's decision was "objectively unreasonable," meaning the "outcome...cannot reasonably be justified under existing Supreme Court precedent." Hackett v. Price, 381 F.3d 281, 287 (3d Cir.2004) (citations omitted); Schriro v. Landrigan, 550 U.S. 465, 473 (2007) ("the question under AEDPA

is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold."). As applied to this case, the "proper question was whether fair-minded jurists could agree with the Superior Court, not whether it erred in denying relief." Brown v. Wenerowicz, 663 F.3d 619, 632 (3d Cir.2011).

It is not necessary to appeal to AEDPA's deferential standard of review to dispose of Schaffer's first claim, that Judge Foradora gave an improper Allen charge, and Schaffer's second claim, that Judge Foradora violated his rights by sentencing him on the basis of uncharged conduct. Judge Foradora analyzed the law correctly, not just "not unreasonably." AEDPA's standard of review also disposes of Schaffer's fourth claim, that Megan's Law violates the Ex Post Facto Clause and denies due process because it requires less than a reasonable doubt standard before imposing its reporting requirements. The state courts rejected that claim based on a not unreasonable analysis of the relevant Supreme Court precedent.

That leaves the third claim, that Collins was ineffective in violation of the Sixth Amendment in failing to prevent Schaffer from making damaging admissions in the Megan's Law assessment process. As to that claim, it is not necessary for me to ask whether fair-minded jurists would reject the Superior Court's Sixth Amendment analysis, because fair-minded jurists have already done

so: the collateral review of Schaffer's claim of ineffectiveness is not just fundamentally flawed in its understanding of the Sixth Amendment, it is as a matter of logic unreasonable because it contradicts the record of the Superior Court's own decision on direct appeal.

I laid out the relevant portions of the record above. There is no dispute about what Collins did: Collins had one post-verdict conversation with Schaffer, during which he advised Schaffer of his right to remain silent, and which advice Collins qualified by the suggestion that Schaffer's cooperation might be looked upon favorably by Judge Foradora. There is also no dispute that at the time, Collins knew that his client was facing more than 50 years in prison for the conduct involving S. Collins also knew that two other individuals had come forward and said that Schaffer had sexually assaulted them, and not just that, but did so when they were S.'s age.

Collins had forgotten that Allenbaugh was already involved in this particular case, but Collins knew that (as the state courts held) under state law any SOAB investigator was required to accept as a starting point that Schaffer was guilty and that S. was credible. Collins knew that Schaffer had denied any sexual assault on anyone. Given all this, Collins testified (almost in so many words) that he in fact did conclude that there was no up-side to the Megan's Law process because it was a foregone

conclusion that with the jury verdict confirming that Schaffer had molested S. over a long period of time any expert would recommend finding Schaffer to be a predator.

Collins' basis for concluding that the down-side was similarly limited was that his client had denied the charges. Yet Collins' advice to Schaffer was limited to a reiteration that his participation was voluntary and that it might help to look cooperative. Judge Foradora held that this advice was sufficient to discharge Collins' duty to his client under the Sixth Amendment and the Superior Court adopted that holding.

With all deference to the state courts' appreciation that there is a wide range of effective strategies, this is not just wrong, but it is unreasonably wrong. Even if Collins can be excused for not anticipating the precise disaster for Schaffer that the post-verdict process became, Collins had (and knew that he had) enough information to appreciate that there was no up-side and a real down-side risk to the kind of interview Megan's Law requires. He nevertheless allowed his client to proceed to an interview without accompaniment **or even an explanation of the potential risks**.

Judge Foradora credited Collins' assertion that in general lawyers let their clients go to pre-sentence interviews without counsel all the time, and I am bound by AEDPA to accept it as fact. I am also bound to respect Judge Foradora's implicit

21

finding that it is not ineffective to do so, unless that finding is unreasonable. As a generic assessment of what defense counsel do, Judge Foradora's analysis is not unreasonable, even though there is contrary authority even for that proposition: in Hannah v. Bock, 447 F.Supp.2d 798, 807 (E.D.Mich.2006), Judge Lawson held that trial counsel's failure to accompany his client to a polygraph was ineffective assistance of counsel, where the client confessed to the polygraph examiner after the examiner told the client he failed the exam. Interestingly, Judge Lawson went on to deny habeas relief on grounds similar to those used by Judge Foradora, holding that there was no prejudice because, even though the "attorney's presence is required by good practice so that the defendant can seek advice if needed, and so that the attorney can act as a buffer between his client and overbearing police tactics," 447 F.Supp.2d at 808, the standard practice is to have the attorney in a separate room from the polygraph test, and so the question whether having an attorney in another room would have resulted in no confession was ultimately speculation.

But even a generic Megan's Law investigation is not a generic pre-sentence interview, or even a polygraph: it is an investigation by an interrogator required by law to compile a complete psychological and sexual history of the defendant, beginning with the premise, **according to the Superior Court in this very case**, that any protestation of innocence by the defendant is

22

false. It is in no way the neutral acquisition of biographical data: it is for a defendant convicted of a sexual offense more akin to proceeding into the lion's den.

And this was not even a garden-variety Megan's Law interview (if there are any such). The allegations by Schaffer's relatives were known to Collins, and factored into his trial strategy. It is inconceivable, given the information legally required as part of the Megan's Law assessment, those allegations would not be explored by any investigator. Yet Collins never gave Schaffer any advice as to how to handle that. I hope that it would be universally recognized as ineffective assistance if a lawyer told his client to be interviewed by the police about the charges pending against the client, saying only: "I won't go with you to the interview, but remember you have the right to remain silent. The judge might like the fact that you talked with police." And yet that is exactly what Collins did, and what the state courts, both Judge Foradora and the Superior Court, found that Collins did post-verdict before the SOAB, knowing that there were other accusers who had come forward with allegations of abuse. The state courts held that the Sixth Amendment obligation of counsel to Schaffer was fully discharged by Collins' reminder to Schaffer that he had the right to remain silent. That is so unreasonably wrong that even the high deference AEDPA commands in reviewing state

court rejection of ineffective assistance of counsel claims, see Knowles v. Mirzayance, 556 U.S. 111, 123 (2009), cannot save it.

That the Superior Court's adoption of Judge Foradora's opinion is unreasonable is illustrated by its lack of comment on Judge Foradora's statement that Collins' absence did not prejudice Schaffer because the interviews might have proceeded exactly the same if Collins had been there and his statement that "at best" all Collins could have done at the interviews was to advise his client to remain silent. First of all, even if all Collins could have done was give advice, Collins could have shed some light (or made a more informed decision about how to handle) the factual discrepancy between what Allenbaugh said Schaffer told Everett and what Schaffer said he told Everett. Second, even if he were limited to giving advice there would be a huge difference between Collins sitting in the interrogating room perceiving Schaffer to be making damaging admissions and saying "I think you need to shut up now," and Collins several weeks before the interview reiterating what everyone who has watched television since the 1960s would recognize as Miranda warnings. But most importantly, Judge Foradora and the Superior Court are just flat wrong about the role of counsel under the Sixth Amendment as well as under Pennsylvania law. Even if the right against self-incrimination is personal and must be invoked by the person (not asserted from outside by counsel) an attorney is not a potted plant: Collins in the room

with Schaffer could have invoked Schaffer's right to silence by virtue of his role as counsel. He was not obliged to sit hand in his lap wondering if Schaffer would ask for his advice. The words of the Supreme Court in Maness v. Meyers, 419 U.S. 449, 468 (1975), that:

To hold otherwise would deny the constitutional privilege against self-incrimination the means of its own implementation[,]

are particularly appropriate here. That Miranda warnings are different from and do not equal effective assistance of counsel under the Sixth Amendment was a large part of the rationale behind Moran v. Burbine, 475 U.S. 412 (1986)(no Sixth Amendment violation when police do not tell a suspect that an attorney is trying to get in to see him because no Sixth Amendment right had attached), and United States v. Henry, 447 U.S. 264 (1980)(Sixth Amendment violation when police informant questions suspect after right to counsel attaches), not to mention Commonwealth v. Franciscus, 710 A.2d 1112 (Pa.1998)(police cannot use an agent to interrogate a suspect after right to counsel attaches). The reason for Fifth Amendment decisions like United States v. Lafferty, 503 F.3d 293 (3d Cir.2007)(agents did not honor Fifth Amendment rights of suspect simply by re-reading Miranda warnings) and Nelson v. Fulcomer, 911 F.2d 928 (3d Cir.1990)(police improperly used co-defendant's confession to elicit inculpatory remarks for defendant who had invoked Miranda) is that it is hard to imagine a case in which the right to counsel had attached and counsel then sat idly

by and allowed a client to incriminate himself about uncharged misconduct. That is why the reported cases are about the more difficult question whether a defendant who clearly **has** a right to counsel ought to be given some additional protection beyond <u>Miranda</u> from attempts to get him to waive that right. The path goes from <u>Patterson v. Illinois</u>, 487 U.S. 285 (1988)(adequate waiver of Miranda also waived Sixth Amendment right to counsel), and <u>Minnick v. Mississippi</u>, 498 U.S. 146, 153 (1990)("[O]fficials may not reinitiate interrogation without counsel present, whether or not the accused has consulted with his attorney," unless the suspect initiated the contact), to <u>Maryland v. Shatzer</u>, 130 S.Ct. 1213 (2010), in which the Supreme Court limited <u>Minnick's</u> protection to the paradigm cases in which a suspect may be "badgered" into abandoning his right to counsel. <u>Shatzer</u> held that when a suspect has been released from custodial interrogation and has returned to his "normal life" (in Shatzer's case, the general population of prison) for a sufficient period of time (defined as 14 days) it is constitutionally permissible for the police to attempt to interrogate him again. It did not hold that police may tell counsel for a person in custody "regardless of his invocation of rights we intend to question your client, and while you may advise him if he asks for advice you may not be present during the questions." Yet this is in essence the position that Judge Foradora found that Collins voluntarily put Schaffer in. It is

unreasonable to say that counsel complies with the Sixth Amendment in doing that.

As for the finding of no prejudice, the Superior Court on direct appeal, in the passage quoted above, expressly recognized that Collins' performance prejudiced Schaffer. In fact, on the direct appeal the precise difference between the first panel opinion and the second panel opinion is that the second opinion that affirmed the sentence held that Judge Foradora's sentence properly rested on the evidence that "sprang from [Schaffer's] own mouth."

That the Superior Court found that Schaffer's admissions prejudiced him can be even more clearly seen by contrast with the contemporaneous decision it cited in Schaffer's case, Commonwealth v. Krouse, 799 A.2d 835 (Pa.Super.2002)(en banc). There the Superior Court reversed a predator designation on the grounds that the evidence was insufficient in part because the "record does not substantiate any prior incidents," reported by the expert (coincidentally, William Allenbaugh), even though the expert had reported that there were prior incidents based on the victim's out of court statements. At least two of the concurring judges stressed that this was insufficient where the allegations were unproved, uncharged, and consistently denied by the defendant. That of

course was the position Schaffer was in until he went to the Megan's Law hearing alone[2].

Three years later, the Superior Court abandoned its own reasoning with no reasoning whatsoever, declaring that while Schaffer's claim of ineffectiveness "may have merit," he suffered no prejudice. Judge Foradora's finding in this regard can be understood: Judge Foradora found no prejudice because, as his PCRA opinion quoted above shows, his analysis focused solely on the effect of Schaffer's statements on the question whether Schaffer was designated a predator or not. Judge Foradora and the Superior Court are undoubtedly correct that as far as Megan's Law is concerned the finding that Schaffer was a predator was a foregone conclusion. (Although the state courts nevertheless ignored this in analyzing Collins' decision to allow Schaffer to proceed

---

2. I cannot second-guess a decision simply because it does not work out, but the "prerequisite to this rule's application" is that there has been "a reasonable investigation of the factual scenario" supporting the decision. Rolan v. Vaughn, 445 F.3d 671, 681-82 (3d Cir.2006). Here, Collins testified that his lack of attendance at or even advice about what might happen at the Megan's Law interview was due to his belief that the only fact of significance that Schaffer might be asked about was his guilt of the charges involving S. Even if Collins reasonably believed Schaffer would adhere to his denial of guilt, Collins either did no investigation into what actually goes on at a Megan's Law interview, or he unreasonably misunderstood what the substantive law requires. As the statute makes clear, the process is designed to identify the impetus behind the commission of the crime and the extent to which the offender is likely to re-offend, not just get the defendant's restatement of his trial testimony. See e.g. Commonwealth v. Fuentes, 991 A.2d 935, 943 (Pa.Super.2010)(citations omitted).

unescorted.) But the Superior Court ignored the effect on sentencing that it previously acknowledged. The component of prejudice that is unquestionable is that Judge Foradora took Schaffer's statements, as interpreted and amplified by Allenbaugh, as his basis for sentencing Schaffer to the maximum possible sentence[3].

The writ must issue, therefore, requiring that Schaffer be re-sentenced. Because there is no error under AEDPA in the Megan's Law finding itself there is no basis for holding the Megan's Law hearing again. To remedy the error caused by Collins' ineffectiveness it is only necessary that the re-sentencing must be done without reliance on any statements made by Schaffer to Allenbaugh or Everett in the Megan's Law investigation, and on any findings derived from those statements. There is no reason to believe Judge Foradora could not do that fairly on the trial

---

3. Not only that, but Schaffer, unrepresented by counsel, pleaded guilty to a pending DUI, apparently a first DUI, on the same day as the sentencing on the sex offenses. With the barest colloquy Judge Foradora heard Schaffer waive both his right to counsel and his right to trial, heard a one-sentence statement of the BAC level from the prosecutor, then imposed a consecutive 15-day to one year in prison. In almost 30 years experience with Pennsylvania judges, I have never heard of a judge imposing a consecutive year in prison for a first DUI not involving personal injury or death. It is unreasonable to imagine that Judge Foradora's sentence on the DUI was not influenced by Schaffer's extensive documentation of his pedophilic desires and actions. How then is it reasonable to conclude that Judge Foradora's sentence on the sexual assaults was not similarly influenced?

29

record, but if he wishes to order a new Megan's Law investigation I recommend that a different investigator and expert be selected.

Pursuant to 28 U.S.C.§ 636(b)(1), the parties are given notice that they have fourteen days to serve and file written objections to this Report and Recommendation.

DATE: ___20 Febry 2012___          _____

Keith A. Pesto,
United States Magistrate Judge
Notice by ECF to counsel of record and by U.S. Mail to:

        Paul Len Schaffer FA-0920
        S.C.I. Cresson
        P.O. Box A
        Cresson, PA 16699-0001